IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| JEREMY COOK | § | |
| v. | § | CIVIL ACTION NO. 6:21cv494 |
| BOTIE HILLHOUSE, ET AL. | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

The Plaintiff Jeremy Cook, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this lawsuit complaining of alleged violations of his constitutional rights. The lawsuit was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges. The named defendants are Henderson County Sheriff Botie Hillhouse, Major David Faught, Captain Cody Barnett, Lt. Robert Powers, and Lt. Ray Yockey of the Henderson County sheriff's department, Henderson County task force investigators Kenneth Slaton, Johnathan Hutchison, and Wayne Nutt, an investigator named Gabriel Shue, Dr. Job Mongare, and two unknown deputy sheriffs. Two other defendants, the Texas Commission on Jail Standards and the Henderson County District Attorney's Office, have previously been dismissed.

**I. The Plaintiff's Complaint**

Plaintiff's amended complaint (docket no. 14) is the operative pleading in the case. In this amended complaint, Plaintiff states that during his arrest on July 24, 2019, Shue handcuffed him, grabbed him from behind by his forehead, and pinned his eyelids open while he lay unresisting on the ground so that two unknown officers could kick, punch, and stomp him over and over. The Henderson County jail staff and medical staff ignored his requests to be taken to the hospital, even though he begged for over two weeks for medical attention. At the end of this time, he was taken to the medical department and given X-rays, but then was told that there was nothing wrong with

1

him. Plaintiff states that Sheriff Hillhouse, Major Faught, Captain Barnett, and Dr. Mongare denied him medical care for injuries to his head, neck, and spine. Plaintiff contends that these injuries will show up on MRI's and CT scans and states he believes this was done to punish him because of the crime for which he was charged [attempted capital murder of a peace officer].

In January of 2020, Plaintiff states that Sheriff Hillhouse, Major Faught, Captain Barnett, Lt. Powers, and Lt. Yockey violated his due process rights by taking away his phone privileges for over three months without any disciplinary action. He grieved this issue over and over for three months with no relief. In April of 2020, he received his phone privileges back for about one month, but then on May 16, 2020, the phone privileges were taken away, again without disciplinary action. He got these privileges back in October of 2020. Plaintiff states this all took place during the pandemic while in segregation.

Finally, Plaintiff contends that Sheriff Hillhouse, Major Faught, and Captain Barnett are subjecting him to cruel and unusual punishment by allowing other inmates to "torture" him. He explains as follows:

> The inmates are banging on the walls of my cell with their phone, one of the cell doors that does not have a door stop to keep it from hitting the wall. The inmates have also removed a handle from one of the cell doors and are now using it as a tool [to] torture me with all hours of the night. I've exhausted all administrative remedies and even reached out to Jail Standards by mail on December 22, 2021, and never received a response or any action. They are punishing me once again for my alleged criminal charges, my mental and physical health is declining, due to the conditions I am experiencing from sleep deprivation. I've even reached out to MHMR and told them it's making [me] contemplate suicide on a daily basis, because nobody will help me here.

In a motion for summary judgment filed on August 22, 2022, Plaintiff asks the Court to grant summary judgment in his favor and give him a jury trial. He states that there are several "mitigating facts" proving that law enforcement officers brutally beat him while he was handcuffed, and that the officers "engaged in organized crime" by turning on their body cameras after the fact." He says that the evidence shows the officers "all acted out this malicious act in a way that shows it was organized and premeditated."

**II. The Defendants' Motions for Summary Judgment**

The Defendants Botie Hillhouse, David Faught, Cody Barnett, Johnathan Hutchison, Wayne Nutt, Gabriel Shue, Kenneth Slaton, the unknown deputy sheriffs, and Ray Yockey have filed a motion for summary judgment for failure to exhaust administrative remedies concerning his medical claims. The Defendants have also filed a separate motion for summary judgment on the merits of the remaining claims. The Defendant Dr. Mongare has also filed his own motion for summary judgment. These motions will be addressed separately.

A. Exhaustion

The Defendants' motion for summary judgment for failure to exhaust administrative remedies asserts that Plaintiff did not exhaust his administrative remedies with his regard to his claims concerning medical care. They state that Plaintiff was issued a copy of the Henderson County Jail Inmate Handbook when he was booked into the jail, although he refused to sign for it. According to the Defendants, the inmate handbook contains a full outline of the jail grievance procedure, which requires inmates to file an initial grievance, which is heard by either the lieutenant or a grievance board, and an appeal is taken to the Chief or Sheriff. (Docket no. 45-1, pp. 2-6, 25). An affidavit from Sheriff Hillhouse states that Plaintiff submitted a few grievances concerning his medical care, and Captain Barnett responded to each of these. However, he did not appeal any of the responses to the Sheriff, and thus did not complete the grievance process. Because Plaintiff did not complete the grievance process by appealing any of his medical grievances to the Chief or Sheriff, the Defendants contend that he did not exhaust his administrative remedies on these claims.

Plaintiff filed a response to this motion for summary judgment, but this response (docket no. 47) simply says that "I was brutally beaten by Henderson County law enforcement and then denied proper medical attention and treated with deliberate indifference for 31 months at the Henderson County Jail. I'm just seeking justice for the wrongs committed against me." He does not mention the issue of exhaustion, much less controvert the Defendants' summary judgment evidence. Because Plaintiff did not respond in any meaningful way to the Defendants' motion for summary judgment

on exhaustion, the district court may accept as undisputed the facts listed in support of this motion. *Thorn v. RaceTrac Petroleum Inc.*, slip op. no. 21-30492, 2022 U.S. App. LEXIS 8426, 2022 WL 965095 (5th Cir., March 30, 2022), *citing Eversley v. Mbank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988).

The law governing the exhaustion of administrative remedies is found in 42 U.S.C. § 1997e, which provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Under this statute, prisoners are required to exhaust available administrative remedies before filing suit in federal court. *Jones v. Bock*, 549 U.S. 199, 202, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). Proper exhaustion is required, meaning the prisoner must not only pursue all available avenues of relief, but must also comply with all deadlines and procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 89-95, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). This requirement means mere "substantial compliance" with administrative remedy procedures does not satisfy exhaustion; instead, prisoners must exhaust administrative remedies properly. *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010).

All of the steps in a facility grievance procedure must be pursued in order to exhaust administrative remedies. *Johnson*, 385 F.3d at 515. The Henderson County Jail grievance procedure includes both an initial grievance and an appeal to the Chief or Sheriff. The uncontroverted summary judgment evidence shows that while Plaintiff filed medical grievances, he did not appeal any of them. Thus, he did not pursue all of the available steps in the grievance procedure and thereby failed to exhaust his administrative remedies. The Defendants' motion for summary judgment on the issue of exhaustion of administrative remedies should be granted. *See also Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012) (stating that "district courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint. It is irrelevant whether exhaustion is achieved during the federal proceeding. Pre-filing

exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted.")

  B. Dr. Mongare's Motion for Summary Judgment

  The Defendant Dr. Mongare has filed a separate motion for summary judgment addressing the merits of Plaintiff's medical claims. This motion and the attached summary judgment evidence shows that Plaintiff was booked into the Henderson County Jail on July 24, 2019. A history and physical exam was done by a nurse named Tucker on July 25, at which time his vital signs were registered as normal and he had scratches to both arms and his forehead. He was placed on the list to see the jail doctor at his next visit.

  On August 1, 2019, Plaintiff saw Dr. Mongare, who ordered X-rays of Plaintiff's face and hip. The hip X-rays revealed no fractures, dislocations, or osseous lesions and were interpreted as a normal study. The facial X-rays showed a non-displaced nasal fracture, and because it was non-displaced, Dr. Mongare concluded that there was no indication or necessity for further medical intervention. On August 14, 2019, Dr. Mongare ordered additional X-rays of Plaintiff's ribs. These X-rays also proved to be normal.

  Plaintiff did not file a response addressing Dr. Mongare's motion for summary judgment, and as a result, the district court may accept as undisputed the facts listed in support of this motion. *Eversley*, 843 F.2d at 174.

  The Fourteenth Amendment guarantees to arrestees the right not to have their serious medical needs met with deliberate indifference on the part of the confining officials. *Thompson v. Upshur County*, 245 F.3d 447, 457 (5th Cir. 2001). In order to show deliberate indifference, the arrestee must show that the defendant was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, that the defendant actually drew the inference, that the defendant disregarded that risk by failing to take reasonable measures to abate it, and that substantial harm resulted from the deliberately indifferent conduct. *Baldwin v. Dorsey*, 964 F.3d 320, 326 (5th Cir. 2020).

As set out above, Plaintiff's medical claims are foreclosed by his failure to exhaust administrative remedies on these claims. Even were they not foreclosed, Plaintiff has failed to show that Dr. Mongare acted with deliberate indifference to his serious medical needs. The uncontroverted summary judgment evidence shows that Plaintiff was booked into the Henderson County Jail on July 24, 2019 and examined by a nurse the next day. She placed him on the list to see the jail doctor, and Plaintiff saw Dr. Mongare for the first time on August 1, 2019.

At this visit, the evidence shows that Dr. Mongare prescribed blood pressure medication and ordered X-rays, which were done that same day. These X-rays showed a normal result for Plaintiff's hips and a non-displaced nasal fracture for which no treatment was required.[1] Additional X-rays were ordered on August 14, 2019, which again proved normal.

Plaintiff has offered nothing to suggest that Dr. Mongare was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, that he actually drew the inference, that the defendant disregarded that risk by failing to take reasonable measures to abate it, or that substantial harm resulted from the deliberately indifferent conduct. The summary judgment evidence shows that the first time Plaintiff saw Dr. Mongare, the doctor ordered X-rays. Based on the result of these X-rays, Dr. Mongare concluded that medical intervention was not necessary. Neither Plaintiff's disagreement with this assessment nor his self-diagnosis of injuries which he claims will show up on MRI's or CT scans but not X-rays are sufficient to set out a viable claim of deliberate indifference against Dr. Mongare. *Aswegan v. Henry*, 49 F.3d 461, 465 (8th Cir. 1995) (prisoner's self-diagnosis of a serious medical condition is insufficient without medical evidence verifying that the condition exists); *see also Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001) (noting that "deliberate indifference is an extremely high standard to meet"); *Dyer v. Houston*, 964 F.3d 374, 381 (5th Cir. 2020) (deliberate indifference

---

[1] *See, e.g.*, *Villalobos v. Western Regional Jail*, civil action no. 3:18cv1385, 2019 U.S. Dist. LEXIS 106133, 2019 WL 2574202 (S.D.W.Va., May 24, 2019), *Report adopted at* 2019 U.S. Dist. LEXIS 104253, 2019 WL 2579153 (no deliberate indifference for failure to provide treatment for a nasal fracture because no treatment was necessary where the fracture was non-displaced), *citing Riles v. Buchanan*, 656 F.App'x 577, 2016 U.S. App. LEXIS 16305 (2nd Cir. 2016) (no deliberate indifference in failing to treat mildly displaced nasal fracture because such injuries ordinarily heal without medical intervention).

cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm). The Defendant Dr. Mongare's motion for summary judgment should be granted.

### C. The Arrest, Alleged Use of Force, and Jail Conditions

Plaintiff states that his arrest and the alleged use of force occurred on July 24, 2019. He signed his original complaint on December 15, 2021. The Defendants argue that these claims are barred by the statute of limitations. In his response to the Defendants' motion for summary judgment on the merits (docket no. 57), Plaintiff asserts that Defendant Shue made false statements in his report and that he believes a Cherokee County officer named Steel will testify that the Henderson County deputies beat him for no reason other than the fact that Plaintiff was accused of shooting a police officer. He does not mention the statute of limitations in his response.

There is no federal statute of limitations for §1983 actions; instead, federal courts borrow the forum state's general personal injury limitations period and applicable tolling provisions. *Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989). The applicable period in Texas is two years. Tex. Civ. Prac. & Rem. Code §16.003(a); *Pete v. Metcalfe*, 8 F.3d 214, 217 (5th Cir. 1993).

Although Texas law governs the limitations period and the tolling exceptions, federal law governs when the cause of action accrues. Under federal law, a cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. *Burrell*, 883 F.3d at 418. This means that for the limitations period to commence, the plaintiff need not realize that a legal cause of action exists, but need only know the facts that would support a claim. *Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir. 1995); *Salas v. City of Galena Park*, slip op. no. 21-20170, 2022 U.S. App. LEXIS 12709, 2022 WL 1487024 (5th Cir., May 11, 2022).

Plaintiff offers nothing to suggest he did not know the facts of the arrest and alleged use of force when it occurred, on July 24, 2019. Nor has he shown any basis for commencing the limitations period at a different time. *Whitaker v. McDonald*, slip op. no. 20-40569, 2022 U.S. App. LEXIS 394, 2022 WL 68972 (5th Cir., January 6, 2022). Thus, Plaintiff's limitation period began to run on July 24, 2019, and expired on July 24, 2021, almost five months before he filed suit.

Neither has Plaintiff shown any basis for equitable tolling of the statute of limitations. *See Crostley v. Lamar City, Texas*, 717 F.3d 410, 421 (5th Cir. 2013). The Fifth Circuit has explained that "Texas applies equitable tolling sparingly, looking to whether a plaintiff has diligently pursued his or her rights; litigants cannot use the doctrine to avoid the consequences of their own negligence." *Bonner v. Pace*, slip op. no. 20-40424, 2022 U.S. App. LEXIS 5787, 2022 WL 636683 (5th Cir., March 4, 2022).

Plaintiff does not explain the lengthy gap in time between his arrest and the filing of his lawsuit. As a result, his claims concerning the arrest and the alleged use of force incident to that arrest are barred by the statute of limitations, and the Defendants' motion for summary judgment on this point should be granted.[2]

Plaintiff next complains that his telephone privileges were taken away in January of 2020 for three months and then in May of 2020 for five months, without any disciplinary action having been taken against him. A letter to Plaintiff from Sheriff Hillhouse, dated September 24, 2020,

---

[2]The summary judgment evidence offered by the Defendants concerning the arrest shows that at 3:15 a.m. on the morning of July 24, 2019, Plaintiff was riding a motorcycle with no license plate. Officers Rader and Hutchison sought to pull him over, but Plaintiff sped away at over 100 miles per hour. After turning onto a back road, the motorcycle crashed into a ditch and Plaintiff fled into a convenience store. Officer Hutchison apprehended and handcuffed him, but Plaintiff managed to get a pistol from his belt and shoot the officer in the torso. He then ran into the woods. Law enforcement officers pursued him, but he stole a pickup out of a driveway and drove to Cherokee County, where he abandoned the truck in a densely wooded area and fled on foot.

Officers from several jurisdictions began searching for him. Deputy Shue heard the dogs converge on a target and pointed his horse in that direction. He called for Plaintiff to show his hands, but Plaintiff refused. Deputy Shue saw something shiny in Plaintiff's hands and believed it to be a weapon. He was able to get on top of Plaintiff and tried to bring Plaintiff's arms around to be handcuffed, but Plaintiff continued to resist. Deputy Shue struck him several times until he was able to gain compliance. The shiny object seen in Plaintiff's hands was determined to be a portion of the handcuffs which Officer Hutchison had placed on him which Plaintiff had managed to break. Plaintiff was taken back to the staging area, where EMS cleared him and he was taken to the Henderson County Jail. Plaintiff subsequently pleaded guilty to attempted capital murder of a peace officer and was sentenced to 40 years in prison.

Because of the limitations bar, the Court need not and does not seek to resolve the factual differences between Plaintiff's account and that given by Defendants, nor does the Court reach the question of the reasonableness of the use of force; however, the Court notes that in *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012), a use of force resulting in the dislocation of the arrestee's elbow was held to be reasonable on considerably less provocation than the shooting of an officer in the torso.

states that Plaintiff was previously placed on phone restriction because he attempted to have another inmate assaulted at another correctional facility using the inmate phone system. After Plaintiff received his phone privileges back, he used the phone system to give instructions to a family member to have another person assaulted. Consequently, his phone privileges were again revoked. (Docket no. 53-1, p. 62).

In order to establish a due process violation, a plaintiff must show that he was deprived of a liberty interest protected by the Constitution or laws of the United States. *Sandin v. Conner*, 515 U.S. 472, 483-84, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). A prisoner's constitutionally protected liberty interests are generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Id.* at 484.

The Fifth Circuit has held that suspension of inmate telephone privileges does not implicate a liberty interest protected by the Due Process Clause. *Watkins v. LNU*, 547 F.App'x 409, 2013 U.S. App. LEXIS 8262, 2013 WL 5977683 (5th Cir., April 23, 2013); *Lodge v. LeBlanc*, 799 F.App'x 304, 2020 U.S. App. LEXIS 10611, 2020 WL 1672821 (5th Cir., April 3, 2020). The fact that Plaintiff did not receive a disciplinary hearing prior to the suspension of his telephone privileges does not affect this analysis. *See Ramirez v. Secrease*, 174 F.3d 198, 1999 U.S. App. LEXIS 5468, 1999 WL 152933 (5th Cir., February 19, 1999); *Magee v. Crowe*, civil action no. 09-0167, 2010 U.S. Dist. LEXIS 42205, 2010 WL 1751575 (E.D.La., April 1, 2010), *Report adopted at* 2010 U.S. Dist. LEXIS 42234, 2010 WL 1751646 (E.D.La., April 29, 2010). Because Plaintiff has not shown the deprivation of a constitutionally protected liberty interest, the Defendants' motion for summary judgment on this point should be granted.

Plaintiff complains that other inmates were banging on the walls of his cell with various items, and that he exhausted his administrative remedies and contacted the Texas Commission on Jail Standards to no avail. A review of the grievances and medical records contained in the

summary judgment evidence does not reveal any complaints by Plaintiff concerning other inmates banging on his cell door, nor of any medical problems resulting from the noise or any lack of sleep.[3]

The summary judgment evidence contains records showing that Plaintiff was seen by mental health professionals on July 2, 9, 16, 23, and 30, August 6 and 13, November 19, and December 3, 10, and 17, 2021, and denied mental health issues each time (docket no. 53-1, pp. 79-91). On several of these occasions, he denied suicidal ideations, or self-injurious behavior, homicidal ideations, and auditory or visual hallucinations (reflected in the records as "SI/SIB/HI/AVH"). These records contain no mentions or complaints of excessive noise. Although Plaintiff filed several inmate request forms and grievances, none of these mention other inmates making excessive noise.

Plaintiff's assertion that the jail administration is punishing him for his criminal charges by allowing the other inmates to create excessive noise is an "episodic acts or omissions" claim rather than a "conditions of confinement" claim. *See Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999). Because Plaintiff is suing individuals, rather than the municipality, he must show that the officials acted with subjective deliberate indifference. *Hinton v. Harris County*, slip op. no. 21-20550, 2022 U.S. App. LEXIS 19461, 2022 WL 2752805 (5th Cir., July 14, 2022). This requires a showing that (1) the defendant or defendants were aware of facts from which an inference could be drawn that a substantial risk of serious harm exists; (2) the defendant or defendants subjectively drew the inference that the risk existed; and (3) the defendant or defendants disregarded this risk. *Id.*, citing *Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019).

The Fifth Circuit has held that excessive noise, by itself, does not constitute an excessive risk to inmate health and safety. *Honshul v. Foti*, 51 F.3d 1045, 1995 U.S. App. LEXIS 42933, 1995 WL 153425 (5th Cir., March 30, 1995), *citing Lunsford v. Bennett*, 17 F.3d 1574, 1580 (7th Cir. 1994). While a constitutional violation may be set forth by allegations of "noise intentionally designed to deprive him of sleep," *see Johnson v. Texas Board of Criminal Justice,* 281 F.App'x 319, 2008 U.S. App. LEXIS 12056, 2008 WL 2337324 (5th Cir., June 5, 2008), Plaintiff's vague and conclusory

---

[3] Plaintiff did complain to medical personnel on August 26, 2019, about guards making noise by banging the door on his cell window shut, but no complaints about noise by other inmates was noted (docket no. 53-1, p. 100).

allegations are insufficient to set out such a showing. Nor has he presented any facts showing deliberate indifference on the part of any of the named defendants, even assuming that he did file grievances about other inmates making noise. *See, e.g.*, *Emmons v. Painter*, civil action no. MO:20cv185, 2021 U.S. Dist. LEXIS 128649, 2021 WL 2832977 (W.D.Tex., May 23, 2021) (failure to respond to a grievance does not show personal involvement); *Garrett v. Sulser*, civil action no. 6:17cv310, 2018 U.S. Dist. LEXIS 37721, 2018 WL 1192996 (E.D.Tex., March 7, 2018) (rejecting claim that the denial of grievances demonstrated a policy of deliberate indifference); *Whitlock v. Stephens*, civil action no. 5:14cv94, 2016 U.S. Dist. LEXIS 169908, 2016 WL 11474208 (E.D.Tex., October 5, 2016) (holding that the fact that prisoner wrote letters complaining about perceived violations does not give the recipients of those letters a constitutional duty to take the action which the prisoner believed appropriate).

In addition, other than conclusory assertions of harm unsupported by the summary judgment evidence, Plaintiff fails to show any injury stemming from the alleged excessive noise. See *Lacy v. Collins*, 66 F.3d 321, 1995 U.S. App. LEXIS 26925, 1995 WL 535114 (5th Cir., August 8, 1995). Plaintiff's claim on this point is without merit.

### D. Qualified Immunity

The Defendants Botie Hillhouse, David Faught, Cody Barnett, Johnathan Hutchison, Wayne Nutt, Gabriel Shue, Kenneth Slaton, the unknown deputy sheriffs, and Ray Yockey invoked their entitlement to qualified immunity in their motion for summary judgment. The Fifth Circuit has explained that qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Stramaski v. Lawley*, 44 F.4th 318, 328 (5th Cir. 2022). A plaintiff can overcome the defense by showing that the official violated a statutory or constitutional right and that the right was clearly established at the time of the challenged conduct. *Id., citing Voss v. Goode*, 954 F.3d 234, 238 (5th Cir. 2020). In this regard, the Fifth Circuit has explained as follows:

> Qualified immunity shields government officials from civil liability in their individual capacity so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457

11

U.S. 800, 818 (1982)). It protects 'all but the plainly incompetent or those who knowingly violate the law.' *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Our qualified immunity inquiry is two-pronged. *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020). First, we ask whether the facts, viewed in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right. Second, we ask whether the right was 'clearly established.' *Id*. We can analyze the prongs in either order or resolve the case on a single prong. *Id*.

After stating that a right is "clearly established" only if it is sufficiently clear that every reasonable official would have understood that the defendant's conduct violated that right, and that there must be adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that the conduct is definitively unlawful, the Fifth Circuit continued:

> When an official raises qualified immunity on summary judgment, as Sheriff Castloo did here, the plaintiff bears the burden of showing that the defense does not apply. *See Bryant v. Gillem*, 965 F.3d 387, 391 (5th Cir. 2020). To meet that burden, the plaintiff must present evidence, viewed in her [i.e. the plaintiff's] favor, satisfying both qualified immunity prongs by showing that the defendant (1) violated a constitutional right (2) that was clearly established at the time of the defendant's conduct. *See id*.

*Cunningham v. Castloo*, 983 F.3d 185, 190-91 (5th Cir. 2020); *Byrd v. Harrell*, 48 F.4th 343, 346 (5th Cir. 2022) (when a government official has asserted qualified immunity, the burden shifts to the plaintiff to rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct). Conclusory allegations are insufficient to overcome the qualified immunity defense. *Williams-Boldware v. Denton County, Texas*, 741 F.3d 635, 643-44 (5th Cir. 2014).

A review of the pleadings and the summary judgment evidence shows that Plaintiff has failed to overcome his burden of rebutting the qualified immunity defense in that he has not shown the violation of a clearly established constitutional right, nor that disputed issues of material fact exist concerning the reasonableness of the Defendants' conduct. Consequently, the Defendants Botie Hillhouse, David Faught, Cody Barnett, Johnathan Hutchison, Wayne Nutt, Gabriel Shue, Kenneth Slaton, the unknown deputy sheriffs, and Ray Yockey are entitled to qualified immunity.

**III. Conclusion**

On motions for summary judgment, the Court must examine the evidence and inferences drawn therefrom in the light most favorable to the non-moving party; after such examination, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Burleson v. Texas Department of Criminal Justice*, 393 F.3d 577, 589 (5th Cir. 2004). If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial. *Id.*, *citing Allen v. Rapides Parish School Board*, 204 F.3d 619, 621 (5th Cir. 2000).

The plaintiff cannot oppose summary judgment by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated or speculative assertions, or by only a scintilla of evidence. *Boudreaux v. Swift Transportation Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). There is no genuine issue for trial if the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. *Prison Legal News v. Livingston*, 683 F.3d 201, 211 (5th Cir. 2012).

The court has no obligation to sift the record in search of evidence to support a party's opposition to summary judgment. *Adams v. Traveler's Indemnity Co.*, 465 F.3d 156, 164 (5th Cir. 2008). Instead, a party opposing summary judgment must identify specific evidence in the record that supports the challenged claims and articulate the precise manner in which that evidence supports the challenged claim. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A properly supported motion for summary judgment should be granted unless the opposing party produces sufficient evidence to show that a genuine factual issue exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A review of the pleadings and summary judgment evidence in this case shows that there are no disputed issues of material fact and the Defendants are entitled to judgment as a matter of law. Accordingly, the Defendants' motions for summary judgment should be granted.

RECOMMENDATION

It is accordingly recommended that the Defendants' motions for summary judgment (docket no.'s 43, 45, and 53) be granted and the above-styled civil action be dismissed with prejudice.

A copy of these findings, conclusions and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendations must file specific written objections within 14 days after being served with a copy.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's proposed findings, conclusions, and recommendation where the disputed determination is found. An objection which merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific, and the district court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Commission*, 834 F.2d 419, 421 (5th Cir. 1987).

Failure to file specific written objections will bar the objecting party from appealing the factual findings and legal conclusions of the Magistrate Judge which are accepted and adopted by the district court except upon grounds of plain error. *Duarte v. City of Lewisville*, 858 F.3d 348, 352 (5th Cir. 2017).

So ORDERED and SIGNED this 21st day of December, 2022.

K. Nicole Mitchell
_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE